**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MATTHEW HALE,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | **Civil Action No. 21-01469 (JEB)** |
| **v.** ) | |
| ) | |
| **MICHAEL COLLIS,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1), (b)(2), (b)(3), (b) (5), and (b) (6), the Bureau of Prisons

("BOP"), the Counter Terrorism Unit ("CTU"), and Michael Collis, in his official and individual

capacity (collectively "Defendants"), by and through undersigned counsel, hereby respectfully

submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the

Complaint filed by Matthew Hale, Reg. No. 15177-424 ("Plaintiff").

**INTRODUCTION AND SUMMARY**

Plaintiff brings this action against the BOP, the CTU, and Defendant Collis in his official

and personal capacity alleging constitutional claims. Plaintiff's constitutional claims for money

damages should be dismissed because sovereign immunity bars such claims against the BOP or

Defendants in their official capacities; the Court would lack personal jurisdiction over Defendant

Collis in his personal capacity because Plaintiff has failed to serve him properly in his individual

capacity and Defendant Collis does not reside in this District; venue for these claims is improper

in this jurisdiction; and Defendant Collis is protected by qualified immunity.

1

## **BACKGROUND**

### a. **Plaintiff's History**

Plaintiff is a federal prisoner incarcerated at the United States Penitentiary in Marion, Illinois ("USP Marion"). *See* ECF No. 1 ("Pl's Comp."). On April 6, 2005, Plaintiff was found guilty of two counts of Obstruction of Justice in violation of 18 U.S.C. §1503, and Solicitation of a Crime of Violence in violation of 18 U.S.C. §373. *See United States v. Hale*, Case No. 03-cr-0001120273 (N.D. Illinois).

Plaintiff has been incarcerated with the BOP since April 21, 2005. *See* Pl's Comp. He is serving a forty-year sentence for attempting the solicit the murder of a federal judge and obstruction of justice. *See Hale v. United States*, No. 1:08 CV 94, 2010 WL 2921634 (N.D. Ill. 2010), *aff'd*, 710 F.3d 711 (7th Cir. 2013). Plaintiff holds himself out to be "an ordained minister in the Church of the Creator," referred to as the movement of "Creativity." *See* Pl.'s Compl. at 1. Both the Tenth and Seventh Circuits have recognized Creativity as "a 'white supremacist organization' for which [Plaintiff] was the leader." *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 743 (10th Cir. 2019) (quoting *United States v. Hale*, 448 F.3d 971, 975 (7th Cir. 2006)). The BOP has designated Creativity as a Security Threat Group (STG), because inmates following its tenets have engaged in acts of violence. *Id.* at 743. Accordingly, the BOP has imposed communication restrictions on Plaintiff at various points in his incarceration in an effort to restrict his participation in Creativity.[1]

---

[1] *See Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 744 (10th Cir. 2019) ("[T]he BOP imposed mail restrictions for roughly six months in 2010 when [Plaintiff]' sought to reestablish himself as Creativity's leader, eight months in 2013 when he encouraged a neo-Nazi leader to pursue mass activism tactics, and for an ongoing period beginning in 2014 when he targeted a federal judge").

In 2014, Plaintiff filed a lawsuit against the BOP and several individual defendants in which he argued, in relevant part, that restrictions placed upon him while designated at the Administrative Maximum Penitentiary in Florence, Colorado ("ADX"),[2] violated his rights under RFRA and the First Amendment. *Id.* at 744. In that case, the Tenth Circuit affirmed the district court's dismissal of some claims and summary judgment on the rest, holding, inter alia, that "Creativity is not a religion." *Id.* at 748. It thus upheld BOP's restrictions that prevented Plaintiff from "sending or receiving correspondence that 'contains any reference to Creativity, the Creativity Movement, the Worldwide Church of the Creator, the Creativity Alliance, or any permutation of or code for these group names." *Id.* at 744 n.1. Plaintiff further appealed to the Supreme Court, which denied his petition for writ of certiorari. *Hale v. Fed. Bureau of Prisons*, 140 S. Ct. 196 (2019).

In 2019, Plaintiff again challenged several restrictions placed upon his activity, asserting twenty-two claims against fifteen BOP employees in their individual capacities. *Hale v. Marques,* 2020 WL 1593339, at *1 (D. Colo. Mar. 30. 2020). The Court adopted the U.S. Magistrate's recommendation to summarily dismiss several claims based on, among other grounds, issue preclusion and the Tenth Circuit's holding. *Id.* at *2. The Court also granted defendants' motion to dismiss the remaining claims. *Id.* at *11. Plaintiff was granted leave to file an amended complaint as to the remaining claims that were dismissed without prejudice. *Id.* However, the case was voluntarily dismissed on October 28, 2020.

---

[2] Plaintiff was previously incarcerated at the ADX between April 2005 and May 2016. He was then transferred to the United States Penitentiary at Terre Haute ("USP Terre Haute"), but was returned to the ADX in April 2017 due to communication-related conduct. Plaintiff remained at the ADX until his commitment to the CMU at USP Marion in July 2020. *See* Exhibit 2, Inmate History.

On July 1, 2020, Plaintiff was designated to the Communications Management Unit at USP Marion. *See* Exhibit 2, Inmate History. Since that date, Plaintiff has submitted a total of twenty-eight administrative remedy requests and appeals. *See* Exhibit 3, Administrative Remedy Requests. Of these, only three requests relating to the claims in this case were submitted to the BOP's Central Office and are considered exhausted.

**b.  Background on Communications Management Housing (CMUs) and Monitoring**

The CTU is a division of BOP's Intelligence and Counter Terrorism Branch. It is responsible for gathering and analyzing terrorist-related intelligence, which includes monitoring communication from inmates designated to Communication Management Housing Units ("CMUs") within BOP facilities. The CMU houses inmates who require increased communication monitoring to protect the public and ensure the secure and orderly operation of BOP facilities. 28 C.F.R. § 540.200(c); *see also* BOP P.S. 5214.02.

Intelligence Analysts are responsible for monitoring inmate communications with the CMU. They are assigned a case load of inmates and are responsible for monitoring and reviewing the inmate phone, email, transactional data, and postal mail correspondence. They ensure that the inmates do not commit institution rule violations, or criminal acts in the community, and will recommend a rejection or block of an inmate's communication with the public when it becomes apparent that initial or continued communications would jeopardize the safety of the institution or the public. These recommendations are sent to the Warden of the institution for review, and such correspondence may be rejected in accordance with BOP Program Statement 5265.14.

4

That policy tracks 28 C.F.R. § 540.14(d), which states, "[t]he Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains … [m]atter which depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption."

### c.  Plaintiff's Complaint

Plaintiff alleges Defendants violated his constitutional rights during his incarceration in the CMU at USP Marion.  Pl.'s Compl. at 2 ¶6. Specifically, Plaintiff alleges Defendants violated his First Amendment free speech rights by improperly rejecting various pieces of his outgoing mail, as well as articles and a book he authored.  *Id.* at 4 ¶ 9, 6 ¶14. Plaintiff further alleges that BOP has failed to provide him with his "Creativity-mandated religious diet." *Id.* at 9 ¶ 25.  Finally, Plaintiff alleges that BOP's decision to prevent Plaintiff from discussing "Creativity" or related concepts in his correspondence violated the Religious Freedom Restoration Act ("RFRA").  *Id.* at 9-10 ¶28.  Plaintiff seeks injunctive relief, as well as monetary damages from Defendant Collis.  *Id.* at 12.

### STANDARD OF REVIEW

### a.      Subject Matter Jurisdiction under Rule 12(b)(1)

A motion under 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "In reviewing a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), the court must accept the complainant's well pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."

5

*Thompson v. Capitol Police Board*, 120 F.Supp.2d 78, 81 (D. D.C. 2000). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp.2d 61, 64 (D. D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 809 (2004).

In addition, the petitioner bears the burden of establishing the court's jurisdiction. *See Am. Farm Bureau v. EPA*, 121 F.Supp.2d 84, 90 (D. D.C. 2000); *Thompson*, 120 F. Supp.2d 78 at 81 (observing that "on a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence"). The petition should be liberally construed, and the court should view the facts in the light most favorable to the petitioner. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). The court need not limit itself to the allegations in the petition, but it instead may consider any materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction over the case. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Ultimately, a court may not entertain any claims without adequate jurisdictional basis. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D. D.C. 1987).

b.      **Failure to State a Claim under Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*).

6

Hence, the focus is on the language in the complaint, and the requirement that the "'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, *supra*, at 557 (citing Fed. R. Civ. P. 8(a)(2); *Pac. Bell Tel. Co. v. linkLine Communs., Inc.*, 129 S. Ct. 1109, 1123 (2009) (concluding that plaintiff's allegations failed to satisfy the *Twombly* standard because even if plaintiff pled the required facts defendant did not owe plaintiff a duty under antitrust laws).

Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Even where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not "show[n]" -- "that the pleader is entitled to relief." *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, at 556. Under *Twombly*, the tenet that a court must accept allegations as true is not applicable to naked recitals of a cause of action's elements, supported by mere conclusory statements. *Iqbal*, at 1949-50 (citing *Twombly*, at 555); *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (The Court need not accept any inferences or conclusory allegations that are unsupported by the facts pled in the complaint). In addition, determining whether a complaint states a plausible claim requires the reviewing court to draw on its experience and common sense. *Iqbal*, at 1950.

A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. *Id*, 1950-51. Legal conclusions must be supported by factual allegations. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. (concluding that respondent's factual allegations failed to establish that petitioners purposefully housed detainees in the ADMAX SHU *due to their race, religion, or national origin* [emphasis added]). Accordingly, the focus is on the language in the complaint.

## ARGUMENT

### a.   Sovereign Immunity Bars Plaintiff's Constitutional Claims For Monetary Damages Against the BOP, the CTU, and Defendant Collis in His Official Capacity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal Government...from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." *Id*. Congressional consent to suit, a waiver of the government's traditional immunity, must be explicit and is strictly construed. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). Absent clear congressional consent to entertain a claim against the United States, a District Court lacks authority to grant relief. *United States v. Testan*, 424 U.S. 392, 399 (1976). Given the absence of such consent or waiver, any constitutional claims for monetary damages against the BOP and CTU should be barred.

It is equally settled that a suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Perkins v. Ashcroft*, 275 Fed. Appx. 17, 17 (D.C. Cir. 2008) ("To the extent appellant was attempting to sue the former Attorney General in his official capacity, the action is barred by sovereign immunity"); *Abdus-Shahid M.S. Ali v. United States Parole Commission*, 2007 U.S. App. Lexis 27270, *2 (D.C. Cir. 2007) ("The district court properly dismissed the claims against the Commission and against the Commissioner and the examiner in their official capacities as barred by sovereign immunity"). Thus, any constitutional claims Plaintiff purports to allege against Defendant Collis in his official capacity are similarly barred.

Finally, Plaintiff requests five million dollars in monetary damages against Defendants for constitutional violations. However, "it is well settled that Congress has not waived immunity for suits seeking monetary damages that arise under the Constitution." *Scinto v. Fed. Bureau of Prisons,* 608 F.Supp.2d 4, 8-9 (D.D.C.) (*aff'd* 352 F. App'x 448 (D.C.Cir. 2009)); *Zinda v. Johnson,* 463 F.Supp.2d 45, 48–49 (D.D.C.2006) (quoting *Jackson v. Bush,* 448 F.Supp.2d 198, 201 (D.D.C.2006)); *see also Clark v. Library of Cong.,* 750 F.2d 89, 102–03 (D.C.Cir.1984). Plaintiff could only recover monetary damages against Collis in his individual capacity, under a *Bivens* liability claim. As described below, there is no cause of action under *Bivens* in this case. Accordingly, Plaintiff is not entitled to this relief.

b.     **Plaintiff's Constitutional Claims Fail because this Court Lacks Personal Jurisdiction Over Defendant Collis in His Individual Capacity.**

Where, as here, a plaintiff seeks relief against an individually-named defendant in his personal capacity, the Court must acquire personal jurisdiction in order to enter a binding judgment. *Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984); *Griffith v. Nixon*, 518 F.2d 1195 (2d Cir.), *cert. denied*, 423 U.S. 995 (1975). There is no record of proper service as to Defendant Collis. Accordingly, this Court is without personal jurisdiction over Collis in the absence of proper service, and dismissal of the individual-capacity claims is appropriate.

In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987) ("Before a... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-445 (1946) ("[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served."); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999).

It is well-established that, in an action against a federal employee in an individual capacity, the individually-sued defendant must be served with process in accordance with rules applicable to individual defendants. *See* Fed. R. Civ. P. 4(i)(3); *Simpkins v. District of Columbia Government,* 108 F.3d 366, 369 (D.C. Cir. 1997); *Lawrence v. Acree,* 79 F.R.D. 669, 670 (D.D.C. 1978); *Navy, Marshall & Gordon v. U.S. International Development-Corporation Agency,* 557 F.Supp. 484, 489 (D.D.C. 1983); *Delgado v. Bureau of Prisons,* 727 F.Supp. 24 (D.D.C. 1989). Rule 4 generally requires that a copy of the summons and complaint be delivered

10

to the defendant personally (or his appointed agent) or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. Fed. R. Civ. P. 4(i)(3) and (e)(2).

Service on the Attorney General of the United States and the United States Attorney for the district in which the action is brought, pursuant to the rules applicable to official capacity suits, "does not obviate the requirement of personal service ... where the action is in substance against a federal official in his individual capacity." *Lawrence,* 79 F.R.D. at 670; *Delgado,* 727 F.Supp. at 27. Indeed, under Rule 4(i)(3), service on the United States is required *in addition to* service on an individual federal defendant. Fed. R. Civ. P. 4(i)(3).  Because the record in this action does not establish proper personal service upon Defendant Collis, *see* Summons, any claim against him personally is subject to dismissal due to improper service.

Moreover, this action was commenced on May 27, 2021, and the Rules provide for dismissal of a complaint if the defendants are not served within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). The 120-day period ran on or about September 24, 2021, without Plaintiff having sought additional time to effect proper personal service and without any explanation of excusable neglect for the failure. Plaintiff's individual capacity claims against Collis are therefore subject to dismissal under Fed. R. Civ. P. 4(m), 12(b)(2), 12(b)(4) and 12(b)(5).

### c.  Plaintiff's Constitutional Claims Should be Dismissed for Improper Venue

To the extent that Plaintiff's complaint makes claims against Defendant Collis in his individual capacity, they must also be dismissed under Fed. R. Civ. P. 12(b)(3). Generally, "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff

11

will select an unfair or inconvenient place for trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173 183-84 (1979). Under 28 U.S.C. § 1391(b), such a cause of action may be brought only in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). The D.C. Circuit has admonished "[c]ourts in this circuit [to] examine the challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)

In this case, venue is not proper in this District under 28 U.S.C. § 1391(b) because Defendant Collis does not reside in the District of Columbia, but in West Virginia. *See* Exhibit 1, Declaration of Michael Collis. In addition, the alleged events giving rise to Plaintiff's claims took place while Plaintiff was incarcerated at USP Marion in Illinois, not in this District. Venue cannot be proper in this District when there is no evidence that Defendant Collis resides in this District and none of the events took place here. Accordingly, the Court should dismiss Plaintiff's purported individual capacity constitutional claims under Federal Rule of Civil Procedure 12(b)(3).[3]

Even under 28 U.S.C. § 1391(e), which includes the venue provision covering lawsuits against employees of the United States or any agency of the United States, venue is improper in

---

[3] Under 28 U.S.C. § 1406(a), if the venue is improper, the court may transfer the case to a district where it could have been properly brought in the interest of justice. However, the claims in this case would be subject to dismissal no matter where the transfer for all of the reasons stated herein. Therefore, outright dismissal better serves the interests of justice. *See Simpkins v. District of Columbia Government*, 108 F.3d 366 (D.C. Cir. 1997).

this District. According to § 1391(e), venue is proper when the district is where (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Again, neither Defendant Collis nor Plaintiff reside in the District of Columbia, and the events the Plaintiff complains of took place while he was located at USP Marion in Illinois. Thus, venue is not proper in the District of Columbia.

###### d. Issue Preclusion Bars Plaintiff's Claims that Depend on Finding that Creativity is a "Religion" under the First Amendment or RFRA.

Plaintiff raises a First Amendment claim under the Free Exercise of Religion Clause, as well as a violation of his religious rights under RFRA. Specifically, Plaintiff asserts that Creativity is a religion and challenges his correspondence restrictions. Further, Plaintiff alleges that BOP's refusal to provide him with a "Creativity-mandated religious diet" infringes on his religion. Both claims should be dismissed on issue preclusion grounds.

"[T]he doctrine of res judicata holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004). "Res judicata plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153(1979)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-55.

13

Issue preclusion is one application of res judicata which "bars successive litigation of fact or law actually litigated and resolved in a valid court determination essential to the judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553, U.S. 880, 892 (2008) (internal quotations omitted). Under the collateral estoppel form of issue preclusion, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Sheppard v. District of Columbia*, 2011 U.S. Dist. Lexis 16958 (D. D.C. 2011) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245 (D.C. Cir. 1992)). This form of preclusion applies if three conditions are met: "First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first [case]. Third, preclusion in the second [case] must not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983).

As described above, Plaintiff commenced a similar action in 2014. On March 28, 2018, summary judgment was granted in favor of the BOP and against Plaintiff. *Hale v. Fed. Bureau of Prisons*, No. 14-cv-00245-MSKMJW, 2018 WL 1535508, at *1 (D. Colo. Mar. 28, 2018). The Tenth Circuit affirmed summary judgment on January 7, 2019. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 754 (10th Cir. 2019).

The Tenth Circuit concluded that Plaintiff's alleged religion of Creativity does not qualify as a religion subject to protection under RFRA. *Id.* at 748-49. The Tenth Circuit also determined that Creativity does not constitute "beliefs that are religious in nature" as required for the protections of the First Amendment Free Exercise Clause. *Id.* Regarding mail restrictions, the

14

court concluded,

> the mail restrictions on Mr. Hale are rationally connected to the
> BOP's security interests. There is overwhelming evidence in the
> record that Creativity poses an institutional security risk and that
> Mr. Hale has sought to advance the white-supremacist goals of
> Creativity in ways that pose a danger both inside and outside of
> ADX. By limiting Mr. Hale's ability to send and receive mail
> communicating Creativity's message, the BOP mitigates internal
> and external safety risks.

*Id.* at 750-51.

Issue preclusion bars Plaintiff from relitigating the Tenth Circuit's determinations in this

case. Plaintiff's RFRA and Free Exercise claims rely on the proposition that Creativity is a

religion. Yet, the Tenth Circuit decided this identical issue in the negative. That action has been

finally adjudicated on the merits, as the court entered summary judgment, which was affirmed.

Plaintiff was the plaintiff in that action and fully and fairly litigated the issues over nearly five

years. The fact that Plaintiff is seeking relief against a new party is of no consequence, as

Defendant Collis is in privity with the BOP. "'There is judgment in a suit between a party and a

representative of the United States is *res judicata* in relitigation between that party and another

officer of the government.'" *Nuckols v. Fed. Bureau of Prisons*, 578 F.Supp.79, 83 (D.D.C.

2008) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940)).

Accordingly, these claims should be dismissed on issue preclusion grounds.

Moreover, any claims that relate to texts concerning Plaintiff's "philosophy, politics, and

social commentary that share a Creativity belief in white supremacy" are also precluded. *Hale v.

Marques,* 2020 WL 1593339, at *4 (D. Colo. Mar. 30. 2020) (internal quotation marks omitted).

The Tenth Circuit upheld BOP restrictions on "sending or receiving correspondence that contains

any reference to Creativity, the Creativity Movement, the Worldwide Church of the Creator, the

Creativity Alliance, or any permutation of or code for these group names." *Id.* (citing *Hale*, 79 F. App'x at 744 n.1) (internal quotation marks omitted). As such, "[Plaintiff] cannot evade BOP's restrictions simply by using a permutation or code name." *Id.*

e. **A *Bivens* Remedy is Not Available for First Amendment Claims.**

Plaintiff brings constitutional claims against Defendant Collis in his individual capacity for violating Plaintiff's First Amendment rights to free exercise of religion and free speech. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). *Bivens* provides federal courts with "discretion in some circumstances to create a remedy against federal officials for constitutional violations, but [courts] must decline to exercise that discretion where 'special factors counsel hesitation' in doing so." *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (quoting *Bivens*, 403 U.S. at 396). The constitutional rights at issue in *Bivens* concerned a citizen's right to be free from unreasonable searches and seizures under the Fourth Amendment. Since then, the Supreme Court has expanded *Bivens* to only two other causes of action:

> [A] claim of gender discrimination in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a claim by an employee against her employer, a Congressman, who had fired her); and a claim of cruel and unusual punishment in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a claim against the individual federal corrections officials who mistreated a prisoner). Significantly, the Supreme Court has never extended its holdings in these two cases beyond their context.

*Mejia-Mejia v. U.S. Immigration and Customs Enforcement*, No. 18-1445, 2019 WL 4707150

16

(D.D.C. Sept. 26, 2019). "Expanding the *Bivens* remedy is now considered a disfavored judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), and the Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.*

Plaintiff alleges Defendant Collis is liable for monetary damages under *Bivens* because Collis rejected his outgoing mail and prevented distribution of his articles and book in violation of the First Amendment. Plaintiff's claims fail because they are not recognized *Bivens* violations, and there are relevant factors counseling against extending *Bivens* here. The Supreme Court has explicitly "declined to extend *Bivens* to a claim sounding in the First Amendment." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). Also, several factors counsel heavily against the extension of *Bivens* in this case. *Abbasi,* 137 S. Ct. at 1863, instructs that "when alternative methods of relief are available, a [subsequently] *Bivens* remedy usually is not."

Here, Plaintiff has access to alternative and more appropriate mechanisms to remedy his claims. Plaintiff could have availed himself to the BOP's Administrative Remedy Program, filed a claim in federal court for injunctive relief, or through the Federal Torts Claim Act. *See Lopez-Arrogo v. U.S.*, 2018 WL 3770051 (E.D. Cal. Aug. 8, 2018) (possibility of injunctive relief precludes first amendment access to court claim.). Therefore, Plaintiff's First Amendment claims against Defendant Collis in his individual capacity should be dismissed.

    **f.   Defendant Collis is Entitled to Qualified Immunity as His Actions Did Not Violate any Clearly Established Right of the Plaintiff**

Even if the Court were to create a *Bivens* remedy, Defendant Collis would be entitled to qualified immunity. Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800,

807 (1982). This doctrine shields government officials from suit in performance of a discretionary function unless that official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. As long as there is a "legitimate question" about the constitutionality of a particular conduct, "it cannot be said that…such conduct violates clearly established law." *Mitchell*, 472 U.S. at 528. Qualified immunity, in sum, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The plaintiff in such a claim bears the burden of pleading the defendants acted in violation of a clearly established constitutional right. *Harlow*, 457 U.S. at 818; *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Moreover, the plaintiff bears the burden of defeating a defendant prison official's claim to qualified immunity. *Al-Ra'id. v. Ingle*, 69 F.3d 28, 33 (5th Cir. 1995). Thus, when a defendant invokes qualified immunity, as here, the burden rests with the plaintiff to demonstrate the inapplicability of the defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001), set out a two-part qualified immunity analysis to be used when officers are alleged to have violated constitutional rights. Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis [to address] first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). The first element is a determination of whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. The second element is a determination of "whether the right was clearly established" or "whether it would be clear to a reasonable officer that his conduct was unlawful

in the situation he confronted." *Id*. at 201-02. Here, none of Plaintiff's claims successfully state a

constitutional violation at all, let alone a violation of a clearly-established constitutional right.

Plaintiff raises three First Amendment free speech claims, noe of which can withstand

dismissal. While inmates retain protections afforded by the First Amendment, it is settled that

"[t]he fact of confinement as well as the legitimate goals and policies of the penal institution

limit these retained constitutional rights." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Thus,

prisons are constitutionally permitted to place restrictions on inmates' liberties where the

regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.

78, 89 (1987).

Based on *Turner*, the Supreme Court has repeatedly held that First Amendment rights are

appropriately curtailed in prison. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). *Turner* is

satisfied if officials, in their judgment, believe that the challenged actions would advance the

desired goal. *See Johnson v. California*, 543 U.S. 499, 513 (2005) (observing that *Turner* does

not require proof a policy advanced the goal, but only that officials "might reasonably have

thought" it would). In conducting this analysis, courts "must accord substantial deference to the

professional judgment of prisons administrators, who bear a significant responsibility for

defining the legitimate goals of a corrections system and for determining the most appropriate

means to accomplish them." *Overton*, 539 U.S. at 132. The burden is not on the government

actors to provide the validity of their actions, "but on the prisoner to disprove it." *Id*.

In his first claim, Plaintiff alleges that Defendants refused to permit Plaintiff to mail a

book he had written ("The Triumph of Life: An Assault Upon the Values of the Current

Society"), which Plaintiff claims violated the First Amendment. *See* Pl.'s Compl. at 4. Plaintiff

alleges that BOP had "no legitimate penological interest" in prohibiting him from sending the book. *Id.* at 4, ¶10. However, under *Iqbal*, the Court must disregard legal conclusions, and examine the facts pleaded to determine whether they support the assertion that the BOP had no legitimate interest in blocking the dissemination of the book. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiff describes the book as "mere philosophical opinion" that does not advocate "any sort of imminent violence or violations of the law," but his claim does not include a complete accounting of the content of the book. *See* Pl.'s Compl. at 4, ¶10. Plaintiff does not plead that the book was devoid of any mention or discussion of Creativity. *Id.* Instead, Plaintiff argues that it contains his personal views in book form, leaving open the question of whether the expressed views are in alignment with Creativity. *Id.* at 4-5, ¶10. The facts as pleaded by Plaintiff do not plausibly support the inference that the BOP had no legitimate penological interest in intercepting the book. Accordingly, the claim should be dismissed.

Similarly, in claim two, Plaintiff alleges that the BOP and Defendant Collis rejected every article he has attempted to send out concerning "current affairs and other topics" since his designation to the CMU at USP Marion. *Id.* at 6, ¶14. Plaintiff fails to account for the names and number of articles in question or address their content. Instead, Plaintiff again vaguely asserts that the articles were "wholly lawful" and merely expressed "facts and opinions." *Id.* at 6, ¶15.

In claim five, Plaintiff alleges that the Defendants routinely reject Plaintiff's non-Creativity correspondence, while improperly citing the ban in an effort to suppress Plaintiff's correspondence. *Id.* at 10-11, ¶30. Plaintiff's allegations do not include sufficient facts to suggest

that Defendants' actions were not reasonably related to legitimate penological interest. As Plaintiff has pled only conclusory allegations of correspondence rejection, both claims should be dismissed.

In sum, the facts in this case fail to support Plaintiff's claims that his constitutional rights were violated by Defendant Collis. Plaintiff makes conclusory statements and offers no evidence or specific facts to support his claims. Plaintiff also offers insufficient allegations, and certainly no demonstration, that any actions or omissions of Defendant Collis were objectively unreasonable in reference to clearly established law. Therefore, Plaintiff has not met his burden of showing a violation of a clearly established constitutional right, and Defendant Collis is thus entitled to qualified immunity.

### g. Plaintiff is Not Entitled to Injunctive Relief.

The statute governing prospective and injunctive relief under the PLRA, codified at 18 U.S.C §3626(a)(1) and (2), puts substantial limits on injunctive and other "prospective relief." "Prospective relief" is defined in the statute as "all relief other than compensatory monetary damages." 18 U.S.C. §3626(g)(7). Specifically, the Act provides, "relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in *Porter v. Nussle*, 534 U.S. 516, 525 (2002), as 'any aspect of prison life') shall extend no further than necessary to correct the violation of the federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1) and (2).

In his complaint, Plaintiff indicates that he wants to enjoin the Defendants from their

21

practice of (1) rejecting his correspondence on Creativity grounds; (2) denying his Creativity religious diet; (3) disallowing his literary works and articles from leaving the institution; and (3) rejecting his outgoing mail unless it "actually threatens imminent illegal or disruptive activity."

Petitioner is not entitled to the relief he seeks. The court must make particularized findings of the federal right violated and the needs-narrowness- intrusiveness requirements under the act. *Id.* This mandatory requirement must be more than mimicking the language of the statute. *See Cason v. Seckinger*, 231 F.3d 777 (11th Cir. 2000); *see also, Johnson v. Breeden,* 280 F.3d 1308 (11th Cir. 2002). And the statute further states, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

The District of Columbia Circuit Court has established that in deciding a petition for a preliminary injunction a court must weigh four factors:

> (1) whether the Plaintiff has a substantial likelihood of success on the merits; (2) whether the Plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest.

*Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 (D.C. Cir. 2001).

Plaintiff has not met the exacting requirements for an injunction. First, he has no likelihood of success on the merits. Plaintiff's claims that BOP rejected his correspondence on Creativity grounds; and denied his Creativity religious diet are all subject to dismissal under the *res judicata* doctrine as argued above. Moreover, Plaintiff cannot show that BoP violated his constitutional rights protected under the First Amendment or RFRA by disallowing his literary works and articles from leaving the institution and rejecting his outgoing mail because that claim

22

is precluded and otherwise lacks merit as argued above. Second, Plaintiff will not suffer irreparable injury if an injunction is not granted because he has no First Amendment right rooted in a false and unrecognized religion. Here, Plaintiff's harm is speculative. The party seeking preliminary relief must not only show that the alleged harm "will *in fact* occur" but must also show that the injury complained of is "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (internal quotations and citations omitted, emphasis in original). Plaintiff makes conclusory allegations that the rejection of his mail, articles, and book violated his rights, but there is no threat to his physical well-being. Thus, the rejection of his mail and his other allegations do not involve any harm that may be imminent. Finally, the grant of a preliminary injunction could substantially compromise institution safety and would not further the public interest. To grant Plaintiff the relief he is seeking would undermine the BOP's ability to ensure the safety and security of institutions and the welfare of the community.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's complaint be dismissed with prejudice.

January 25, 2022                              Respectfully submitted,


                                             MATTHEW M. GRAVES, D.C. Bar #481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Acting Civil Chief


23

By:    /s/
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
Telephone: (202) 252-2562

24