IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW HALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 23-cv-1296-DWD |
| BUREAU OF PRISONS, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Matthew Hale, an inmate of the Federal Bureau of Prisons (BOP) currently detained at Federal Correctional Institute in Marion, Illinois, (FCI Marion), brings this civil rights action concerning his First Amendment rights while incarcerated. The Defendant filed a Motion for Summary Judgment (Doc. 69) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded. (Doc. 73). The evidence supports Plaintiff's contention that he exhausted administrative remedies so the Motion will be denied.

BACKGROUND

Plaintiff's allegations all concern his ability to send and receive various forms of communication (emails, U.S. Mail, books, etc.) while housed in the "communications management unit" (CMU) at FCI Marion. This case originated in the District of Columbia but was transferred to this Court last year. Upon review of the original complaint (Doc.

1), and a proposed supplement (Doc. 42-1), Plaintiff was allowed to proceed on seven claims for injunctive relief.  The claims are:

| | | |
|---|---|---|
| **Claim 1:** | | Violation of First Amendment right to freedom of speech by suppressing Hale's book; |
| **Claim 2:** | | Violation of First Amendment freedom of speech by suppressing articles written by Hale; |
| **Claim 5:** | | Violation of First Amendment freedom of speech regarding Hale's mail; |
| **Claim 6:** | | Violation of First Amendment right to freedom of speech by suppressing Hale's new book, Racism: a Reappraisal; |
| **Claim 7:** | | Violation of First Amendment freedom of speech by taking away Hale's access to the BOP's email service due to the particular speech which Hale had expressed therein; |
| **Claim 8:** | | Violation of First Amendment freedom of speech by taking away Hale's access to U.S. Mail; |
| **Claim 9:** | | First Amendment retaliation. |

(Doc. 58 at 3-4).

The parties agree upon the relevant evidence—administrative remedy documentation submitted by the Defendant in support of its Motion.  (Doc. 69; Doc. 73 at 2 ("Plaintiff here notes for the record that all documents in his possession relevant to the issue of exhaustion were turned over by Defendant and filed with Defendant's motion for summary judgment.")).

## FINDINGS OF FACT

Plaintiff's original complaint was filed on May 27, 2021, and he moved to supplement his original complaint on December 27, 2022.  (Doc. 42).

Plaintiff fully exhausted eight administrative remedies related to his First Amendment rights at FCI Marion. (Doc. 69 at ¶ 24, Def. Statement of Material Facts (SUMF)). The remedies are: 1054388, 1054426, 1059178, 1100791, 1103605, 1109772, 1144396, 1149397. (*Id.* at ¶¶ 25-32). Copies of the remedies are attached in full to the Defendant's Motion.

> Of significance, in remedy 1054388, Plaintiff alleged in part:
>
> This complaint is against analyst Collis of the CTU ("counter terrorist unit") for censoring, suppressing, and rejecting my incoming and outgoing mail on grounds that violate my clearly established constitutional rights as well as statutory and BOP rights for that matter. …. Collis (and the BOP of course) are not letting me discuss my church and religion within my correspondence which violates my 1st Amendment right (and BOP right and RFRA right to free exercise of religion) and he is also barring me from completing an unrelated book because he thinks it expresses my religious beliefs which is also of course illegal.

(Doc. 69-5 at 14). The Regional Administrative Appeal response issued on January 19, 2021, and the Central Office Appeal was finalized on April 21, 2021. (Doc. 69-5 at 2, 11).

> Additionally, in remedy 1054426, Plaintiff alleged in part:
>
> Agent Collis is continuing to refuse to let an email article of mine go out even though I have revised it to address the BOP's concerns. The article, entitled "Thoughts on my transfer to Marion CMU," was initially rejected on 9/17/2020. I then resubmitted a revised form of it on or about 10/4/20 but to no avail thus far. […] (Just ask him why he rejected my email!) Thanks.

(Doc. 69-6 at 8). The Central Office Appeal was finalized on May 5, 2021. (Doc. 69-6 at 2).

The Defendant concedes that Plaintiff properly exhausted Claim 2 (in part), and Claims 6, 7, and 8, and Defendant has moved to withdraw the affirmative defense of failure to exhaust as to those claims. (Doc. 70).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g., Walker v.*

*Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The PLRA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

For constitutional claims like the one at issue, an inmate must use the BOP's Administrative Remedy Program described in 28 C.F.R. § 542.10 *et seq.*, which creates a four-step process for addressing grievances. Before initiating the formal grievance process, an inmate must first attempt to resolve his complaint by submitting an informal resolution form detailing any efforts he made to address the problem. 28 C.F.R. § 542.13. Second, if this does not resolve the grievance, the inmate must submit a formal Administrative Remedy Request (BP-9) where he is incarcerated within twenty calendar days of the event or injury giving rise to the complaint. 28 C.F.R. §§ 542.13-.14. Third, if the inmate is not satisfied with the warden's response to the Administrative Remedy Request, the inmate may file an appeal to the appropriate Regional Director (BP-10) within twenty calendar days of the warden's signed response. 28 C.F.R. § 542.15. The

fourth step is an appeal to the Office of General Counsel using a Central Office Administrative Remedy Appeal (BP-11) filed within 30 days of the Regional Director's response.

Both parties have cited to the *Palay v. United States* case for their arguments concerning the sufficiency of Plaintiff's remedies to exhaust his claims. 349 U.S. 418 (7th Cir. 2003). In *Palay*, an inmate attempted to pursue failure to protect, negligent reassignment, and inadequate medical care claims against the BOP under the Federal Tort Claims Act (FTCA). Palay was a pretrial detainee at the Metropolitan Correctional Center (MCC) in Chicago at which time he was transferred from a pretrial detainee housing pod to a 'holdover' pod with convicted individuals and gang rivals. Within hours of his housing reassignment, Palay was sleeping on a bunk when a fight broke out during which he was struck while sleeping with a fire extinguisher. He sustained lacerations, and in the following days he experienced at least three unexplained seizures.

In a Form 95 (the form to exhaust FTCA claims), Palay complained of a failure to protect or a negligent reassignment to the holdover area, and he mentioned that he continued to have medical issues. However, the Seventh Circuit noted that "he stated no facts suggesting that prison medical staff had treated him inappropriately. Whereas, for example, Palay's complaint notes that an MCC physician had dismissed his seizure disorder and that his requests for seizure medication were repeatedly denied, there is not a hint of this in his Form 95." *Palay*, 349 F.3d at 426. The *Palay* Court concluded that the Form 95 did not exhaust a claim about deficient medical care because though it mentioned injuries, it did not mention that Palay needed further care or that he had been

denied care. "[B]ecause Palay did not include facts in his Form 95 from which a legally sophisticated reader might have discerned that he had received inadequate medical treatment, it would appear that Palay did not exhaust his administrative remedies with respect to his medical claim." *Id.* at 427.

The purpose of the PLRA's exhaustion requirement, is to give the prison a full and fair opportunity to address and resolve an issue short of litigation. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Some courts have concluded that to exhaust a retaliation claim, an inmate must explicitly mention retaliation in a properly exhausted grievance or administrative remedy. *See e.g.*, *Price v. Friedrich*, 816 Fed. App'x 8, 10 (7th Cir. 2020) (plaintiff failed to mention retaliation in any of his underlying grievances, so the grievances were insufficient to exhaust a retaliation claim and such a finding did not impose a 'heightened' pleading standard on plaintiff relative to the grievance process). By contrast, others have found that where the subject matter of the grievance could logically demonstrate retaliation, then the grievance itself need not mention the legal theory of 'retaliation' to suffice for exhaustion purposes. *See e.g.*, *Aref v. Holder*, 2013 WL 12341048 (D.C. Feb. 19, 2013) (collecting cases for the proposition that an inmate does not have to assert a specific legal theory in his grievance to exhaust a retaliation claim) ("the fact that plaintiff did not state specifically in his administrative grievance that the 2008 CMU designation was done in retaliation for his speech does not mean he has not exhausted his administrative remedies."); *see also Gomez v. United States*, 2016 WL 3458216 at * 4 (S.D. Ill. June 24, 2016) (finding that a plaintiff who fully exhausted an administrative remedy about the denial of medical care, could also pursue an Equal

Protection claim about the denial of medical care despite not mentioning the term Equal Protection in the exhausted remedy because it was a legal theory related to the same exhausted facts, and the grievance process does not require the exhaustion of explicit legal theories).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing. It is undisputed that Plaintiff understood and had access to the administrative remedy procedure, and that he adequately utilized the process multiple times at all levels of review.

Defendant argues that Plaintiff does not have sufficient administrative remedies concerning Claims 1, 5, 9, and part of 2. Plaintiff disagrees on all claims. Both sides rely on the same evidence, and simply dispute the sufficiency of identified administrative remedies to exhaust particular claims.

Beginning with Claim 1, the Defendant argues that Plaintiff does not have an administrative remedy to exhaust his claim about his book, The Triumph of Life: An Assault Upon the Values of the Current Society. (Doc. 69 at 10). Defendant's argument is premised about the contention that Plaintiff did not explicitly name this book title in a properly exhausted remedy, whereas by contrast, he explicitly named his other book (Racism: A Reappraisal) in a properly exhausted grievance. Plaintiff counters that despite not explicitly naming the book in remedy 1054388, this remedy was intended to exhaust his claim about this book. (Doc. 73 at 7-8). The contents of grievance 1054388 clearly demonstrate that Plaintiff complained about not being allowed to mail out a "book" not

related to his religion. In Claim 1 of his Complaint (Doc. 1), Plaintiff referred to a book that an analyst was refusing to let him send out both as his "third" book, and by the title, "The Triumph of Life: An Assault Upon the Values of Current Society." (Doc. 1 at 2-3). Plaintiff's Complaint was filed on May 27, 2021, just about one month after getting a final ruling on remedy 1054388. Given the temporal proximity between remedy 1054388 and Plaintiff's complaint, the Court finds it a fair inference that the book he referenced in remedy 1054388 was the same book he then gave a title for in Claim 1 of his complaint. Given this conclusion, the Court finds that Plaintiff adequately exhausted Claim 1 of his complaint.

Second, Defendant contends that although Plaintiff exhausted a remedy as to an article titled "Thoughts on My Transfer to Marion CMU," he did not exhaust remedies as to any other potential article for which no titles have been given. (Doc. 69 at 10). Plaintiff counters that remedy 1054426 was sufficient both as to the original article and a revision of that article, because it mentioned both in text. (Doc. 73 at 9). Thus, Plaintiff contends that Claim 2 was properly exhausted both as to the original article and the revision. Given that Plaintiff limited his argument on exhaustion about articles to just the original and revised copies of "Thoughts on My Transfer to Marion CMU," the Court finds that he properly exhausted a remedy as to both the original and revised version of the article. However, to the extent there were other articles in question, the Court finds that there is no remedy exhausted as to any other article. Claim 2 will be allowed to proceed as limited to the original and revised article only.

Third, Defendant contends that Plaintiff did not exhaust a remedy concerning restrictions on his mail that were purportedly justified by his religion, when in fact he contends the mail had no religious purpose. (Doc. 69 at 11). Plaintiff counters that remedy 1054388, the remedy related to Claim 1, was also sufficient to exhaust for purposes of Claim 5 because it discussed restrictions on his mail. Plaintiff's position is accurate, remedy 1054388 clearly and unequivocally discussed restrictions on his incoming and outgoing mail related both to items discussing his religion and others that he alleged had no link to his religion. (Doc. 69-5 at 2-14). As such, Defendant's position that Plaintiff failed to exhaust this claim is not supported by the evidence, and Plaintiff may proceed on Claim 5.

Fourth and finally, Defendant contends that Plaintiff has failed to exhaust Claim 9 concerning retaliation, because none of the remedies that he exhausted prior to adding this claim to the case mentioned retaliation. (Doc. 69 at 11-12). Plaintiff counters that each properly exhausted remedy was sufficient to exhaust a retaliation claim because retaliation is merely an additional legal theory associated with the facts presented in the exhausted remedies. (Doc. 73 at 12-13). This is the closest call about exhaustion presented in this case, as was the similar issue in *Palay*. As noted above, the Seventh Circuit concluded in *Price* that an inmate failed to exhaust a retaliation claim where his underlying grievance made no mention of retaliation, but other courts have found that if the facts of a grievance could support a retaliation claim, then the grievance need not explicitly state retaliation as a legal theory. In *Palay*, the Seventh Circuit likewise found

that an inmate did not exhaust a claim about deficient medical care where his Form 95 mentioned injuries but did not suggest care was inadequate.

Ultimately, the precise facts of the claims presented are outcome determinative for this issue and set Plaintiff's claims apart from *Price* and *Palay*. In *Price*, an inmate exhausted a remedy about the destruction of some of his property by a prison guard, but the remedy made no mention of a retaliatory basis for the destruction. *Price b. Friedrich*, 2018 WL 3432725 at * 5 (E.D. Wisc. July 16, 2018). When Price filed a lawsuit, he argued that not only did the guard destroy his property, but he did so in retaliation for separate inmate complaints that Price had filed against the guard's colleague. In this scenario, Price's allegations of retaliation relied on distinct facts that were not presented in the remedy and would not have been immediately apparent to the prison during the grievance process. The District Court and Seventh Circuit concluded that the failure to make any mention of retaliation made the grievance about destroyed property insufficient to exhaust the retaliation claim, because it was not apparent that the property was destroyed as a form of retaliation.

Likewise, in *Palay*, an inmate sought to bring a lawsuit about deficient medical care, but he had only filed a grievance that suggested injuries, not one that suggested deficient medical care. The *Palay* Court concluded that the facts presented in the Form 95 were not sufficient to support a negligent medical care claim, because even a legally sophisticated reader would not suppose he intended to attack medical care he had received by merely stating he had been injured.

Plaintiff's situation is distinct because he argues that the restrictions on his First Amendment activity discussed in his exhausted remedies and in association with the other claims in this lawsuit, are the exact facts that also support a theory of retaliation. He further contends that as such, he did not need to include the legal label of 'retaliation' in a grievance to properly exhaust such a claim, because the claim relies on the same nucleus of facts presented in exhausted remedies and a legally sophisticated reader would have recognized this. The Court finds this line of argumentation persuasive, particularly since Plaintiff filed eight exhausted remedies prior to filing this lawsuit that all described what he believed to be improper and ongoing restrictions on his communications.

Unlike Price, who premised retaliation on a separate causal chain—his filing of inmate complaints about an officer's colleague—Plaintiff's theory of retaliation is part and parcel of the very events described in multiple exhausted remedies. And unlike Palay, who mentioned an injury, but did not suggest a lack of care, Plaintiff identified a harm in the form of suppression of his incoming and outgoing materials and broadly labeled this harm as a violation of his rights. He complained of, "censoring, suppressing, and rejecting my incoming and outgoing mail on grounds that violate my clearly established constitutional rights" (Doc. 69-5 at 12). In the hands of a sophisticated reader, this could mean he was alleging his correspondence was rejected for an illegitimate reason such as retaliation. This is enough to suggest that a retaliation claim could be forthcoming, and it does not rely on facts external to the subject of the remedy, like Price or Palay did. In other exhausted remedies, Plaintiff repeatedly alleges that he

encountered problems with things like sending out an article, corresponding via email, or transmitting U.S. Mail. In each remedy, he describes the restriction on his liberty or the control of his correspondence as baseless, and a total violation of his constitutional rights.[1] Any of these remedies could be broadly read to suggest that the issues he faced were perhaps a by-product of retaliation. As such, the Court finds that Plaintiff's remedies filed and exhausted prior to this lawsuit were sufficient to exhaust for Claim 9.

### DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion (Doc. 69) is **DENIED**. Defendant's Motion to Withdraw the Affirmative Defense (Doc. 70) is **GRANTED**. Plaintiff may proceed on Claims 1, 2 (as to his article *and* the revision of the same article), 5, 6, 7, 8 and 9. A merits discovery schedule will issue separately.

**IT IS SO ORDERED.**

Dated: April 19, 2024

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge

---

[1] As additional examples, in remedy 1103605, he alleged, "I appeal the total sudden and unjustified taking away of my email access[.]" (Doc. 69-9 at 12). In remedy 1059178, he alleged, "An email of mine was rejected by the BOP on November 3rd for no conceivable justification." (Doc. 69-7 at 12). In remedy 1144396, he alleged, "I have repeatedly filed administrative remedy requests with your office proving, beyond all doubt, that my CTU "analyst" has been lying about the contents of my outgoing mail in order to reject the same." (Doc. 69-11 at 11). These allegations could all suggest to a sophisticated reader that retaliation could be at issue.