# Exhibit 2

# Defendant's Answers to Interrogatories

*Hale v. Federal Bureau of Prisons,*
Case No. 23-cv-1296-DWD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MATTHEW HALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 23-cv-1296-DWD |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES**

COMES NOW, Defendant Federal Bureau of Prisons ("Defendant"), by and through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Kyle Christopher Oehmke, Assistant United States Attorney, and hereby provides the following Answers to Plaintiff's First Interrogatories:

**Preliminarily, Defendant reserves the right to supplement the following Answers as information and implicated documents continue to be uncovered in this matter.**

**INTERROGATORY NO. 1**:

IDENTIFY ALL PERSONS employed by or acting on behalf of YOU who possesses any information relevant to this lawsuit, involved in this lawsuit, including their names, ADDRESS(ES), and contact information. Additionally, DESCRIBE their relationship to the case what information they are believed to possess..

> **ANSWER: Defendant identifies the following individuals employed (or formerly employed) by the BOP: Michael Collis; Daniel Sproul (Ret.); Jason Simmons (Counterterrorism Unit Chief); Kathy Hill (Intelligence Research Specialist) (Ret.); and Amy Kelly.**
>
> **Defendant further identifies Plaintiff's counselors and case managers throughout his incarceration at BOP as well as the wardens of the BOP**

Page 1 of 11

**ANSWER:** **Consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order.**

**INTERROGATORY NO. 4**:

For each item of CORRESPONDENCE written by Plaintiff and rejected for sending by the Defendant, or sent to Plaintiff and rejected by Defendant, from July 2020 to the present, DESCRIBE the specific reasons for rejecting each.

**ANSWER:** **Consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order.  The individual(s) who reviewed such correspondence may further elaborate via declaration or otherwise.**

**Plaintiff was recently approved for placement on Restricted General Correspondence after his arrival at FCI Cumberland CMU.  During a search of his property from FCI Marion CMU, he was found to be in possession of several copies of *Mein Kampf* and Creativity-related books as well as two new manuscripts – Plaintiff's translation of *Mein Kampf* and a manuscript titled *Why Ta-Nehisi Coates is Wrong; White Supremacy, Racial Reality, and the Truth of America's Foundings*. BOP review of the last document indicates it met the criteria for rejection based on his prior attempts at releasing books from prison.**

**INTERROGATORY NO. 5**:

For each item of CORRESPONDENCE written by Plaintiff and rejected for sending by the Defendant, from July 2020 to the present, IDENTIFY any individuals involved in the decision-making process REGARDING the rejection of each specific item of CORRESPONDENCE. Provide the dates and circumstances surrounding the rejection of each, including any COMMUNICATION(S) YOU had REGARDING these rejections.

**ANSWER:** **Objection insofar as this Interrogatory seeks information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the work product doctrine.**

**As concerns non-privileged and non-work product responsive communications, subject to and without waiving the foregoing**

**objections and consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order. The individual(s) who reviewed such correspondence may further elaborate via declaration or otherwise.**

## INTERROGATORY NO. 6:

Explain the specific incidents that led to YOUR decision to take away Matthew Hale's access to the email service in November 2020, DESCRIBE the specific reasons for doing so, and IDENTIFY any individuals involved in the decision-making process REGARDING this action, including any COMMUNICATION(S) YOU had REGARDING this action.

**ANSWER:** **On October 20, 2021, a review of Plaintiff's e-mail activity since his placement in the CMU was conducted, which revealed Plaintiff had approximately 53 e-mails to multiple contacts rejected since 2020. Supporting documentation generally cited such communications as detrimental to the security, good order or discipline of the institution, threatening harm towards members of the public or staff, and/or encouraging activity which could lead to the use of physical violence or group disruption. Based on such information and due to Plaintiff's repeated misuse of the public messaging feature of the BOP e-mail system (Trulincs), it was recommended that his access to the public messaging feature be restricted by the Warden. Warden Daniel Sproul ultimately concurred with such recommendation to be reviewed at six-month intervals. Plaintiff's e-mail access had been previously removed at ADX Florence, allowed upon his placement at CMU, and later revoked after the foregoing misuse.**

**Further, consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order.**

## INTERROGATORY NO. 7:

Explain the specific incidents that led to YOUR decision impose mail restrictions on Matthew Hale in October 2022, DESCRIBE the specific reasons for doing so, and IDENTIFY any individuals involved in the decision-making process REGARDING this action, including any COMMUNICATION(S) YOU had REGARDING this action.

**ANSWER:** **Plaintiff was placed on Restricted General Correspondence after a review of his communications and institutional conduct was conducted reflecting approximately 130 pieces of his correspondence and e-mails had been rejected for various reasons. This included communications detrimental to the security, good order or discipline of the institution, threatening harm towards members of the public or staff, and/or encouraging activity which could lead to the use of physical violence or group disruption. A review of Inmate Staff Messages was conducted, which revealed Plaintiff had repeatedly misused the inmate to staff messaging system to make veiled threats towards staff. The request was reviewed and concurred with by BOP legal counsel and approved by Warden Daniel Sproul, along with recommendations for continuance of the status.**

**Further, consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order.**

## INTERROGATORY NO. 8:

IDENTIFY all DOCUMENT(S) in YOUR possession that RELATE TO the rejection of Hale's CORRESPONDENCE from July 2020 to the present, including a brief description of each item.

**ANSWER:** **Consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order.**

## INTERROGATORY NO. 9:

Provide details REGARDING the POLICIES or guidelines that govern or justify the rejection of inmate CORRESPONDENCE. IDENTIFY any legal authority referenced by YOU in relation to the rejection of inmate CORRESPONDENCE.

**ANSWER:** **Objection insofar as this Interrogatory is overbroad, vague, and compliance therewith would be unduly burdensome.**

**Subject to and without waiving the foregoing objections, CTU analysts have completed or complete the BOP's Investigative Intelligence and Terrorism Management courses upon or following assignment to the unit. When analyzing incoming and outgoing correspondence and publications, Michael Collis refers as needed to BOP Program**

> **Statements on Correspondence, Incoming Publications, Communication Management Units, and the Trust Fund Manual, among others.  Defendant refers to https://www.bop.gov/PublicInfo/ execute/policysearch?todo=query,  which  links  to  responsive documents.**
>
> **Furthermore, consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production (to be provided upon entry of a protective order) as many of the implicated BOP memoranda cite to applicable policies and/or guidelines.**

## INTERROGATORY NO. 10:

Explain the rationale behind the decision to label the Church of the Creator as a "security threat group," and IDENTIFY any individuals involved in the decision-making process REGARDING this action, including any COMMUNICATION(S) YOU had REGARDING this action.

> **ANSWER:    Objection as this Interrogatory is overbroad, vague, not relevant to any party's claim or defense, and not proportional to the needs of the case, especially considering the Church of the Creator has been recognized as a security threat group by the courts, which holds preclusive effect here.  *See, e.g.*, *Hale v. Fed. Bur. of Prisons*, 759 Fed. Appx. 741 (10th Cir. 2019).**
>
> **Subject to and without waiving the foregoing objections, the National Gang Unit and its predecessor, the Sacramento Intelligence Unit, have conducted threat assessments on the Church of the Creator in the past and as recently as 2024.**

## INTERROGATORY NO. 11:

IDENTIFY any other inmates or individuals who have had their CORRESPONDENCE rejected on similar grounds as Hale's. Please provide specific details about those cases, including YOUR reasons for the rejection and any actions taken by YOU, and IDENTIFY any individuals involved in the decision-making process REGARDING each such action.

> **ANSWER:    Objection as this Interrogatory is overbroad, vague, not relevant to any party's claim or defense, and not proportional to the needs of the case.**

**INTERROGATORY NO. 12**:

Explain the specific steps YOU take to evaluate whether a piece of CORRESPONDENCE

complies with prison rules or POLICIES REGARDING religious content.

> **ANSWER:** **Objection insofar as this Interrogatory is overbroad, vague, not relevant to any party's claim or defense, and not proportional to the needs of the case.**
>
> **Subject to and without waiving the foregoing objections, correspondence related to religious expression is generally governed by BOP Program Statements on Incoming Publications, Correspondence, and Mail Management Manual. An analyst may consult with BOP Central Office Religious Services when correspondence and/or publications relate to recognized religions.**
>
> **With respect to Plaintiff's writings and consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order. The individual(s) who reviewed such correspondence may further elaborate via declaration or otherwise.**

**INTERROGATORY NO. 13**:

For each item of CORRESPONDENCE written by Plaintiff and rejected for sending by

the Defendant, from July 2020 to the present, IDENTIFY any legitimate penological interests that

contributed to YOUR decision to reject the CORRESPONDENCE.

> **ANSWER:** **Consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production, which will be provided upon entry of a protective order. The individual(s) who reviewed such correspondence may further elaborate via declaration or otherwise.**

**INTERROGATORY NO. 14**:

DESCRIBE any training or guidance YOU received or provide to YOUR agents, servants

or employees REGARDING the handling of inmate publications and CORRESPONDENCE, and

IDENTIFY all DOCUMENTS REGARDING that training, guidance, or POLICY relevant to

inmate CORRESPONDENCE.

**ANSWER:** **Objection insofar as this Interrogatory is overbroad, vague, and compliance therewith would be unduly burdensome.**

**Subject to and without waiving the foregoing objections, CTU analysts have completed or complete the BOP's Investigative Intelligence and Terrorism Management courses upon or following assignment to the unit. When analyzing incoming and outgoing correspondence and publications, Michael Collis refers as needed to BOP Program Statements on Correspondence, Incoming Publications, Communication Management Units, and the Trust Fund Manual, among others. Defendant refers to https://www.bop.gov/PublicInfo/ execute/policysearch?todo=query, which links to responsive documents.**

**Furthermore, consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production (to be provided upon entry of a protective order) as many of the implicated BOP memoranda cite to applicable policies and/or guidelines.**

## INTERROGATORY NO. 15:

DESCRIBE any training or guidance YOU received or provide to YOUR agents, servants or employees REGARDING the Creativity religion or the handling of inmate CORRESPONDENCE involving the Creativity religion, and IDENTIFY all DOCUMENTS REGARDING that training, guidance, or POLICY relevant to the Creativity religion.

**ANSWER:** **Objection insofar as this Interrogatory is overbroad, vague, and compliance therewith would be unduly burdensome. Further objection as Creativity is not a religion but constitutes, represents, and/or is associated with a Security Threat Group.**

**Subject to and without waiving the foregoing objections, CTU analysts have completed or complete the BOP's Investigative Intelligence and Terrorism Management courses upon or following assignment to the unit. When analyzing incoming and outgoing correspondence and publications, Michael Collis refers as needed to BOP Program Statements on Correspondence, Incoming Publications, Communication Management Units, and the Trust Fund Manual, among others. Defendant refers to https://www.bop.gov/PublicInfo/ execute/policysearch?todo=query, which links to responsive documents.**

**Furthermore, consistent with Federal Rule of Civil Procedure 33(d) and local practice, Defendant refers to its document production (to be provided upon entry of a protective order) as many of the implicated BOP memoranda cite to applicable policies and/or guidelines.**

**INTERROGATORY NO. 16**:

DESCRIBE any instances, from July 2020 to the present, where YOU have allowed CORRESPONDENCE RELATED TO the Creativity religion to be sent out of the prison. Please include the specific circumstances surrounding each instance and the rationale for YOUR decisions.

**ANSWER:** **Objection as this Interrogatory is overbroad, vague, not relevant to any party's claim or defense, and not proportional to the needs of the case. Further objection as Creativity is not a religion but constitutes, represents, and/or is associated with a Security Threat Group.**

**INTERROGATORY NO. 17**:

Explain the specific incidents that led to YOUR decision to assign Matthew Hale to the Communication Management Unit (CMU), DESCRIBE the specific reasons for doing so, IDENTIFY any individuals involved in the decision-making process REGARDING this action, including any COMMUNICATION(S) YOU had REGARDING this action, and disclose any POLICY YOU considered in making this decision.

**ANSWER:** **In general, a packet is prepared containing a recommendation for CMU placement, which is reviewed by the Counterterrorism Unit and approved by the Deputy Director of the BOP. Plaintiff was rejected for placement in 2016, referred again in 2020, and thereafter accepted for placement in the CMU program.**

**INTERROGATORY NO. 18**:

IDENTIFY other inmates assigned to the CMU at FCI Marion, explain the specific incidents that led to YOUR decision to assign each of these inmates to the CMU and DESCRIBE the specific reasons for doing so in each case.

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing Answers to Interrogatories are true and correct.

Executed on  1/13/26

**Michael Collis**
**Intelligence Analyst**
**Federal Bureau of Prisons**
**Counter Terrorism Unit (CTU)**