IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MATTHEW HALE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 23-cv-1296-DWD** |
| **vs.** | ) | |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Matthew Hale, an inmate of the Federal Bureau of Prisons, brought this action concerning his ability to exercise his First Amendment rights within the confines of the "Communications Management Unit" (CMU) at the Federal Correctional Institute in Marion, Illinois. The case is now before the Court on the Bureau of Prisons' (BOP) Motion for Summary Judgment. (Docs. 97, 98). Though Plaintiff's counsel sought and received an extension of time to respond to the motion, no response was timely filed by the July 10, 2026, deadline. For reasons explained herein, the Motion is granted in full.

## Background and Litigation History

Plaintiff originally filed this action in the United States District Court for the District of Columbia in late May of 2021. (Doc. 1). The complaint enumerated five claims, as follows:

> Claim 1: First Amendment free-speech claim pertaining to the alleged suppression of Plaintiff's book, The Triumph of Life: An Assault Upon the Values of Current Society.

> Claim 2: First Amendment free-speech claim pertaining to the alleged suppression of Plaintiff's written articles.
>
> Claim 3: Violation of Plaintiff's religion via the restriction of his mail and the failure to offer a religious diet.
>
> Claim 4: Violation of the Religious Freedom Restoration Act (RFRA) by controlling Plaintiff's communications and thus preventing him from proselytizing to others outside the prison.
>
> Claim 5: First Amendment violation related to Plaintiff's mail alleging that his mail is censored even when it has no link to Creativity and poses no threat.

(Doc. 1 at 4-11). As relief, Plaintiff sought monetary damages from Collis and injunctive relief. (*Id.* at 12). The original defendants—Michael Collis, the Counterterrorism Unit, and the BOP—moved to dismiss. (Doc. 12). Plaintiff responded (Doc. 20), and Defendants replied. (Doc. 26). The District Court granted the motion in part and denied it in part. (Docs. 28, 29).

Specifically, the Court found that Plaintiff's claims centered on his religious exercise, Claims 3 and 4, were barred by claim preclusion based on the Tenth Circuit's prior ruling on the same claims in *Hale v. Fed. Bureau of Prisons*, 759 Fed. App'x 741, 743 (10th Cir. 2019). The Court also concluded that Plaintiff could not proceed against Defendant Collis in his individual capacity, or against the Counterterrorism Unit. (Doc. 29 at 14-22). Thus, Plaintiff was left solely with Claims 1, 2, and 5 against the BOP seeking injunctive relief. Plaintiff sought reconsideration of the Court's ruling on dismissal, but his motion was denied. (Doc. 38). On January 10, 2023, Defendant moved to transfer the case from the District of Columbia to the Southern District of Illinois. (Doc. 43). The case was transferred in April of 2023. (Docs. 49, 50).

At the time of transfer, Plaintiff had a pending Motion to Supplement the Complaint (Doc. 42), and Defendant had yet to file a substantive answer to the original complaint. Plaintiff filed a Motion to Compel seeking to force the Defendant to finally answer his complaint. (Doc. 55). Counsel appeared on Plaintiff's behalf. (Doc. 56). On September 1, 2023, the undersigned granted Plaintiff's Motion to Supplement by allowing the addition of the following additional claims:

> Claim 6: Violation of the First Amendment right to freedom of speech by suppressing Plaintiff's new book, Racism: a Reappraisal.
>
> Claim 7: Violation of First Amendment freedom of speech by taking away Plaintiff's access to the BOP's email service due to the particular speech which Plaintiff expressed therein.
>
> Claim 8: Violation of First Amendment freedom of speech by taking away Plaintiff's access to U.S. Mail.
>
> Claim 9: First Amendment retaliation.

(Doc. 58). Plaintiff sought injunctive relief for the additional claims. (Doc. 42-1 at 14). On October 2, 2023, Defendant answered the complaint and supplement. (Doc. 65).

Defendant eventually sought partial summary judgment on the issue of exhaustion of administrative remedies. (Doc. 69). The Court denied the Motion (Doc. 74), and the case proceeded to merits discovery. (Docs. 74, 75). On September 20, 2024, Plaintiff sought reconsideration of the Court's order allowing his supplemental claims and argued that in addition to the supplemental claims the Court should have allowed him to revive his previously dismissed claims (Doc. 76), but the undersigned denied the motion finding that Plaintiff's attempt to relitigate claims about his religious exercise or RFRA could not be revived (Doc. 82).

During merits discovery, the Defendant sought a protective order limiting Plaintiff's direct access to certain evidence, and providing that it would be disclosed solely to Plaintiff's counsel. (Doc. 92). The protective order was granted. (Doc. 93).

Defendant moved for summary judgment on all counts (Docs. 97, 98). Upon filing for summary judgment, the Defendant has also moved to seal certain exhibits (Doc. 96), and the exhibits have been filed under seal for the Court's consideration (Doc. 98). The Defendant seeks summary judgment for three primary reasons. First, it contends that Claims 7 and 8 are moot based on recent restoration of Plaintiff's access to Trulincs email and the removal of his general mail restriction, and that Claims 1 and 5 are also at least partially moot. Second, it contends that all claims are barred by claim preclusion or issue preclusion. And third, there is no genuine dispute of fact about any of the claims based on the evidence tendered, and thus, judgment in its favor is warranted. The motion is supported with a variety of evidence, including a declaration from Michael Collis, excerpts of Plaintiff's written communication, and internal correspondence amongst prison administrators about the restrictions on Plaintiff's correspondence. Though Plaintiff's counsel received an extension of time to respond, he never responded.

The Defendant relies heavily on references to two prior lawsuits that Plaintiff maintained while incarcerated at ADX Florence, so the Court will briefly recount information about those cases here. In *Hale v. Federal Bureau of Prisons*, 2018 WL 1535508 (D. Colo. Mar. 28, 2018) ("Hale I"), a district court granted summary judgment in favor of the government on Plaintiff's claims that mail restrictions violated his right to Free Exercise under the First Amendment, violated his rights under RFRA, and were

retaliatory. The Court also granted summary judgment on the claims that the denial of Plaintiff's desired religious diet violated the free exercise clause and RFRA, and a prohibition of Plaintiff's possession of a religious text violated his First Amendment right to free speech. First, the *Hale I* court concluded that Creativity was not a religion, thus defeating the free exercise and RFRA claim. The court posited that even if Creativity was a religion, the mail restrictions were narrowly tailored to meet a compelling government interest. The Court further concluded that even if the restriction amounted to retaliation, it was justified by legitimate penological interests. As for the diet claims, the Court concluded that because Creativity was not a religion, neither the free exercise nor the RFRA diet claims could proceed. Finally, Plaintiff had been provided with a copy of his religious text thus mooting the claim. *Id.*

On appeal, the Tenth Circuit affirmed the grant of summary judgment in *Hale v. Federal Bureau of Prisons*, 759 Fed. App'x 741 (10th Cir. 2019) ("Hale II"). The Court acknowledged and rejected Plaintiff's contention that the district court did not analyze his mail restriction claims under the free-speech clause of the First Amendment, reasoning that the claims were necessarily rejected by the lower court's commentary that even if Creativity was a religion, the mail restrictions were justified by a compelling government interest and were narrowly tailored to meet that interest. *Id.* at 749, n. 6. The Tenth Circuit then set forth the *Turner* factors, recited evidence about Creativity as an STG and the risks it posed in the prison environment, and concluded that the mail restrictions were reasonably related to legitimate penological interests. In *Hale II,* the mail restrictions reviewed were a six month restriction when Plaintiff sought to re-establish

Creativity leadership in 2010, an eight month restriction in 2013 when he encouraged a neo-Nazi leader to use mass activism tactics, and an ongoing restriction beginning in 2014 after he targeted a federal magistrate judge. *Id.* at 744. The ongoing restriction prevented Plaintiff from sending or receiving correspondence that contained any reference to "Creativity, the Creativity Movement, the Worldwide Church of the Creator, the Creativity Alliance, or any permutation of or code for these group names." *Id.* at n. 1. In addition to the mail restriction claims, the Tenth Circuit concurred that Plaintiff established no retaliation claim, and that his religious diet claims could not proceed because Creativity was not a religion. The Supreme Court declined to grant certiorari for *Hale II*. *Hale v. Federal Bureau of Prisons*, 140 S. Ct. 196 (2019).

Third, Plaintiff lodged *Hale v. Marques*, 2020 WL 1593339 (D. Colo. Mar. 30, 2020) ("Hale III"), wherein he presented twenty-two claims against fifteen BOP employees in their individual capacity. Upon initial review of the complaint a Magistrate Judge recommended, and a Senior District Judge accepted a recommendation dismissing many claims, including claims 2 and 13, concerning Plaintiff's ability to exercise free speech via his book The Triumph of Life[1] and an article about the future of the white race. Claims 2 and 13 were among many dismissed as issues precluded by *Hale II*, some claims were dismissed for failure to state a claim, and seven claims proceeded. Plaintiff sought reconsideration of the preclusion finding, and the remaining defendants moved to

[1] Plaintiff's complaint did not specify which chapter(s) of the book, Triumph of Life, the defendants refused to mail out. *Hale v. Marques*, Case No. 19-cv-752 (D. Colo. Mar. 13, 2019) (Doc. 1 at pp. 10-11). He alleged that the contents of the book did not give rise to a legitimate penological concern, and there was no rational basis for a prison administrator to think the book chapter would cause others to commit criminal or illegal actions. *Id.*

dismiss the seven claims that survived review. On a second report and recommendation a District Judge found no basis to overturn the conclusion that Claims 2 and 13 were issue precluded by *Hale II*, and the judge extended the *Hale II* issue preclusion to Claim 10—a free-speech claim concerning Plaintiff's ability to disseminate an article about his desired freedom that was substantially similar to material considered in *Hale II*. The *Hale III* Court also rejected a retaliation claim linked to the article as subject to dismissal because it did not consider the article free speech. Additional claims were dismissed for other reasons. Plaintiff moved to reconsider, but before a ruling was issued, he voluntarily dismissed the case in October of 2020. *Hale v. Marques*, Case No. 19-cv-752 (D. Colo. Oct. 26, 2020) (docket entries 102, 106).

## <u>FACTS</u>

Plaintiff was housed in the CMU at FCI Marion from July 1, 2020, through June 9, 2025. (Defendant's Statement of Material Facts (DSUMF), Doc. 97 at ¶ 2). While at the CMU, Michael Collis was the analyst assigned to monitor Plaintiff's non-legal communications. (DSUMF at ¶ 45). In October of 2021, Collis recommended that Plaintiff's access to the Trulincs public messaging email service be restricted after having rejected fifty-three messages as posing a risk of harm to the institution, staff, or general public. (DSUMF at ¶¶ 54-58). The Warden concurred, and the restriction was reviewed and renewed approximately every six months through Plaintiff's transfer to FCI Cumberland. (DSUMF at ¶¶ 59-61). In February of 2026, the Warden of FCI Cumberland discontinued this restriction. ((DSUMF at ¶ 61). Collis attests that he believed the Trulincs restriction supported public safety, was consistent with BOP rules and regulations,

impeded Plaintiff's ability to incite disruptive behavior, and prevented the sharing of information that could endanger inmates, staff, or the public. (DSUMF at ¶¶ 62-64; Collis Decl., Doc. 98 at ¶ 42).

From July 1, 2020, through September 16, 2022, Plaintiff had more than 130 pieces of incoming and outgoing correspondence or emails rejected on the basis that they were associated with the Creativity Movement and/or could be detrimental to the security and safety of the institution, the staff, or the public. (DSUMF at ¶¶ 47-49). With each recommendation, Collis authored a memorandum to be reviewed by the Warden. (DSUMF at ¶ 49). Examples of the materials to be sent out include Plaintiff's book, Racism: A Reappraisal in November of 2021 (Doc. 98-11) and several attempts in the Fall of 2020 to send emails to Plaintiff's mother about his transfer to Marion. (Doc. 98-10). On September 16, 2022, Collis prepared a memorandum to the Warden recommending that Plaintiff be placed on "restricted general correspondence," which would limit Plaintiff's contacts to immediate family, his attorney, and the courts. (DSUMF at ¶ 65; Doc. 98-8 at 18-24). The Warden approved, and Plaintiff continued on the restricted general correspondence status subject to periodic review approximately every six months. (DSUMF at ¶¶ 67-70). On restricted status, Plaintiff could access literature and other materials. (DSUMF at ¶ 72). Plaintiff was removed from restricted general correspondence in February of 2026 by the Warden at FCI Cumberland. (DSUMF at ¶ 74). For the entirety of Plaintiff's time on this status, Collis maintains that the measure supported public safety, impeded disruptive conduct, and protected the public, staff, and inmates. (DSUMF at ¶¶ 75-77).

Defendant posits that this lawsuit concerns three discrete pieces of correspondence, Plaintiff's books The Triumph of Life and Racism: A Reappraisal, and the several versions of the email to his mother about his thoughts on his transfer to Marion. (DSUMF at ¶ 78). The Triumph of Life has seven chapters, with Chapters 1, 2, and 4 mailed out while Plaintiff was at ADX Florence, and Chapter 7 mailed out at Marion. (DSUMF at ¶¶ 81-82). Chapters 3, 5, and 6 were rejected at Florence, and Plaintiff has not attempted to re-send Chapter 6 since that time. (DSUMF at ¶¶ 82-83). Plaintiff attempted to transmit Chapters 3 and 5 at FCI Marion, but Collis recommended rejection of those transmissions in detailed memorandums, and the Warden concurred. ((DSUMF at ¶¶ 84-91; Doc. 98-9). Likewise, Plaintiff's email to his mother was reviewed by Collis several times, he made recommendations to the Warden about denial, and the Warden concurred. (DSUMF at ¶¶ 92-101; Doc. 98-10). Additionally, Plaintiff's second book, Racism: A Reappraisal, was reviewed by Collis, a memorandum was prepared, and the Warden concurred that the book could not be mailed out. (DSUMF at ¶¶ 102-108; Doc. 98-11).

The overarching premise for restrictions on Plaintiff's communication is two-fold. First, Plaintiff is serving a prison sentence for the obstruction of justice and the solicitation of a crime of violence against a federal judge. (DSUMF at ¶¶ 13-14). As a federal prisoner, Plaintiff is prohibited from holding a leadership role in a group outside of the prison. (DSUMF at ¶ 15). Plaintiff's criminal conviction for soliciting harm to a federal judge was linked to a ruling the judge made against the Creativity Movement. (DSUMF at ¶ 18-19). Additionally, followers of the Creativity Movement have caused harm "in his name."

(DSUMF at ¶ 21). Despite his conviction, Plaintiff has continued to assert leadership over the Creativity Movement. (DSUMF at ¶ 17). Second, the Creativity Movement has been labeled as a security threat group (STG) in the BOP for more than three decades. (DSUMF at ¶ 25). An STG signifies a group, gang, or organization that promotes violence or criminal activity, among other things. (DSUMF at ¶ 26).

Creativity members have a history of violent crime amongst the public, and they have caused riots and death of inmates in the prison system. (DSUMF at ¶¶ 29-30). The BOP monitors STGs like Creativity closely to detect risks. (DSUMF at ¶¶ 27, 33). Plaintiff has continued over time to attempt to communicate about Creativity, and he has been subject to a number of restrictions and several transfers related to the need for better monitoring. (DSUMF at ¶¶ 34-30). Plaintiff's placement in the CMU at Marion was a move intended to improve the ability to monitor his activities in furtherance of safety and security of the institution and the public. (DSUMF at ¶¶ 41-43).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is

not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, a non-movant must do more than rest upon the allegations made in the complaint to withstand summary judgment. *See e.g., Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("[T]o withstand summary judgment, the non-movant ... may not rely on vague, conclusory allegations."); *see also, Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

**B. Analysis**

Despite receiving an extension to respond to the motion for summary judgment, neither Plaintiff nor his counsel ever filed a response. The Court construes Plaintiff's failure to respond as an admission of the facts set forth in the Defendant's Statement of Material Facts to the extent the facts are supported by record evidence. LOCAL RULE 56.1(f), (g). Plaintiff's failure to respond does not lead to automatic judgment for the movant, and the Court will still assess the allegations and evidence to determine if judgment is proper as a matter of law. *See e.g., Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

As a preliminary matter, the Court notes that the claims from Plaintiff's original complaint, Claims 1, 2, and 5 were all lodged on May 27, 2021, at a time when Plaintiff did not have any specific regulation on his communications other than monitoring that any inmate is subject to in the CMU. Though Claim 6 about the book Racism: A Reappraisal was filed with the supplemental complaint in December of 2022, the book

was submitted for mailing in November of 2021 and August of 2022. The heightened restrictions on Plaintiff's correspondence from the CMU was implemented via the Trulincs email restriction on October 20, 2021 (Doc. 98-7), and the general correspondence restriction limiting mail to Plaintiff's direct family members in September of 2022 (Doc. 98-8). The individual pieces of correspondence still at issue in this case were all submitted for transmission prior to the Trulincs or general correspondence restrictions. Specifically, Plaintiff attempted to send the Triumph of Life Chapters 3 and 5 in September and November of 2020 (Claim 1), he attempted to send the email with his thoughts on the CMU to his mother a few times in September of 2020 (Claim 2), and he attempted to send the book Racism: a Reappraisal in November of 2021 and August of 2022 (Claim 6). The timeline is significant for the arguments on claim and issue preclusion because the date when Plaintiff attempted to mail something dictates what basis was used to reject it. Identifying the specific reasons for rejection allows the Court to consider if there is identity between the claims and issues previously analyzed in the *Hale I – III* litigation.

Beginning with the simplest argument, Defendant contends that Claims 7 and 8, on plaintiff's general correspondence restriction and Trulincs email restriction, must be dismissed as moot because both restrictions were lifted this year at FCI Cumberland. Plaintiff has not opposed this stance or posited that the issues are capable of repetition and evading review, so the Court finds it appropriate to dismiss Claims 7 and 8 as moot. The Trulincs restriction and general correspondence restriction both appear at first blush like they may have been more restrictive that communication controls implemented at ADX Florence and analyzed in the *Hale I-III* litigation. Both restrictions were supported

by substantial documentation about the rationale (Docs. 98-7 and 98-8), but the Court need not further analyzed the constitutionality of those restrictions under the First Amendment because they have been rendered moot at this juncture.

For Claims 1, 2, 5, and 6, the Court will now delve into the claim and issue preclusion arguments. Defendant argues that all four claims are subject to either claim or issue preclusion. Claim preclusion prevents parties from asserting claims arising out of the same facts that support claims that were, or could have been, advanced in an earlier proceeding. *Grip–Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982). The doctrine protects the finality of judicial decisions and reduces the cost of litigation. *Id.* Claim preclusion applies to bar future lawsuits when there is: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits" in the original action. *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013) (citation omitted). Causes of action are considered identical if they are "based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Id.* Federal courts must afford state court judgments the same preclusive effect those judgments would receive in their home states. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466, (1982) (citing 28 U.S.C. § 1738).

By contrast, issue preclusion holds that "if an issue happens to have been litigated and determined in a previous suit between the parties, there is no reason to litigate it again." *Grip–Pak*, 694 F.2d at 469. Unlike claim preclusion, issue preclusion may be invoked in unrelated claims and asserted by litigants not party to the original suit. *Id.* Issue preclusion applies in a subsequent proceeding when: (1) the issues addressed are

identical, (2) the issue was actually litigated in the prior proceeding, (3) determination of the issue was essential to the prior judgment, and (4) the party against whom issue preclusion is being invoked was fully represented in the prior action. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011). "Whereas [claim preclusion] forecloses all that which might have been litigated previously, [issue preclusion] treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).

The *Hale II* Court considered an ongoing correspondence restriction on Plaintiff that indicated he could not send or receive any correspondence that "contains any reference to Creativity, the Creativity Movement, the Worldwide Church of the Creator, the Creativity Alliance, or any permutation of or code for these group names." *Hale II*, 759 Fed. App'x at 744 n. 1. The Court held that the restriction did not violate the free exercise or free speech clauses of the First Amendment, concluding that the restriction passed muster under the *Turner* factors or the more exacting compelling interest scrutiny. *Id.* at 749 n. 6. In the present analysis, the Court must determine if the restrictions on Plaintiff's mail *prior to* the Trulincs or general correspondence restrictions are barred either by claim or issue preclusion. This requires a determination either that the claims in the present case are identical, or that the factual and legal issues were already resolved by a prior court.

Starting with Claim 1, Defendant argues that claim preclusion applies because in *Hale III* a court already considered the restriction of the Triumph of Life book and deemed it issue precluded by *Hale II*. While it is true that the Triumph of Life was raised as Claim

2 in *Hale III*, neither the parties in that case nor the court ever specified which chapter or chapters of the book were considered. Rather than focusing on the granular content of the Triumph of Life, the *Hale III* Court rejected Plaintiff's argument that the written work was unrelated to Creativity, reasoning that the Tenth Circuit had already upheld restrictions on Plaintiff's mailing of correspondence that referenced Creativity or any permutations of it. The Court wrote, "Hale cannot evade BOP's restrictions by simply using a permutation or a code name. Because Hale has already litigated restrictions on such material [.]" *Hale v. Marques*, 2020 WL 1593339 at * 4. Thus, the Court settled on broad issue preclusion on the notion that the Tenth Circuit had already endorsed the BOP's ability to restrict Plaintiff's outgoing written work regardless of whether it had blatant religious roots or had the same content masquerading as something non-religious.

The Defendant's argument about the Triumph of Life in the present case is a bit perplexing because it asserts claim preclusion not based on the *Hale II* Tenth Circuit case, but rather based on a finding of *issue* preclusion in *Hale III.* The Defendant does not comment on the possibility that any different writing is at issue. In the present action, Defendant posits that some chapters have been approved for mailing and thus are moot, while two others have been rejected at ADX Florence and Marion, and a third chapter was denied at Florence and never resubmitted at Marion. Claim preclusion is meant to apply to disputes arising out of the same facts or nearly identical facts that were raised or could have been raised earlier. The difficulty here is that the Court is unclear about which facts were at issue in *Hale III*, relative to the chapters now still in dispute. The lack

of clarity on this topic makes claim preclusion murky, but it does not necessarily defeat the broader doctrine of issue preclusion.

Issue preclusion may be a more natural fit for the portions of Triumph of Life that are still being restricted. The BOP's ability to restrict Plaintiff's outgoing correspondence was upheld by the Tenth Circuit in *Hale II* when the Court concluded that the restrictions passed scrutiny under the *Turner* factors as reasonably related to a legitimate government interest. The Court highlighted that at the time, Plaintiff was under an ongoing mail restriction implemented in 2014 that dictated that Plaintiff could not send correspondence that mentioned Creativity or any permutation of it. The controversy in this case matches what was set forth and analyzed in *Hale II*. Plaintiff challenges the restriction of several chapters of the Triumph of Life, but he has not contested or created a genuine dispute about the BOP's conclusion that the chapters being withheld were restricted for the reasons identified as appropriate in *Hale II*.

A review of the uncontested evidence submitted by the Defendant shows that Chapters 3 and 5 were rejected at Marion for containing content aligned with the central tenet of Creativity—white racial superiority. Creativity is an STG, which providers the BOP additional justification to monitor and restrict works related to the group. Plaintiff attempted to transmit Chapter 3 twice, and on each of the occasions Collis prepared a detailed memorandum describing risks to the inmate population and general public if the correspondence was disseminated. (Doc. 98-9 at 142-145, 252-255). The same goes for Chapter 5, which Plaintiff only attempted to transmit and Collis rejected once. (Doc. 98-9 at 178-182). Additionally, Defendant included the rejection documentation for Chapter 6,

which was rejected at Florence and which Plaintiff allegedly did not attempt to re-transmit from Marion. (Doc. 98-9 at 66-72). The ability to review the underlying documentation makes it clear that issue preclusion properly applies to Plaintiff's free-speech claim about transmitting chapters of Triumph of Life from the prison.

The Tenth Circuit noted in *Hale II* that the lower court considered Plaintiff's free-speech claims and determined that they were justified by a compelling government interest and were narrowly tailored. On that foundation, the *Hale II* Court concluded that the lower court also necessarily rejected any claim relying on the more lenient *Turner* factors and it ran through the factors to support its reasoning. *Turner* requires: a rational connection between a prison policy and the legitimate government interest used to justify it; whether alternative means of exercising a right are available; what effect accommodating the right would have on guards, prisoners, and resources; and, whether easy-to-implement alternatives exist. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Hale II* Court already resolved the issue of if the BOP could appropriately restrict Hale's written work based on the Creativity content, and it concluded that the BOP had proper justification to do so. This is the same analysis required in this case.

The undisputed evidence in this case continues to support a finding that the BOP's restrictions on Plaintiff's mailings are rationally connected to the BOP's and the public's safety and security interests. Plaintiff was refused the ability several times to mail out Chapters 3 and 5, and once to mail out Chapter 6, but it is evident that he has not been denied all ability to communicate because he sent out chapters 1, 2, and 4 at Florence and Chapter 7 at Marion, meaning that some communication is allowed. Plaintiff has not put

forth any evidence about how the prison could better accommodate him in a way that would not unduly impact the BOP or its ability to monitor what it deems to be a high-risk issue. And, finally, Plaintiff has not identified any readily available alternative accommodations. Thus, the issues considered in *Hale II* still guide the analysis and issue preclusion is warranted, but even it if were not warranted the record contains ample unrefuted evidence to support the restriction of Chapters 3, 5, and 6. As such, summary judgment is warranted on Claim 1.

Next, the Court considers Claims 2 and 6, which concern written work that Plaintiff has produced or attempted to transmit for the first time after the *Hale II* and *Hale III* litigation. As for Claim 2 about the article on Plaintiff's transfer to Marion, Defendant argues this claim is rightfully barred under claim preclusion or issue preclusion because it is similar to an article previously considered by the *Hale III* court where it was found that regulation of the article was appropriate. As with the analysis for Claim 1, claim preclusion may not be the best fit because the facts underpinning *Hale III* and the present claim are different in so much as they contain entirely different written works. However, issue preclusion may still be appropriate, and issue preclusion is what the *Hale III* Court applied when concluding that the article Plaintiff wanted to mail to his mother fit within the framework of a correspondence restriction already considered in *Hale II* by the Tenth Circuit. *Hale v. Marques*, 2020 WL 1593339 at * 8-9.

In the present matter, Plaintiff attempted to send several versions of an email to his mother about his transfer to Marion. Collis prepared memorandums on the reasons he recommended denial of the emails. (Doc. 98-10). Collis faulted the message because

Plaintiff identified himself as a leader of Creativity in the message, and asked readers to help his mother so that he can continue to fight for "our racial future more effectively." (Doc. 98-10 at 2). The Tenth Circuit considered a mail ban on correspondence mentioning Creativity or any iteration of it on the premise that such restriction fit the *Turner* factors and protected public and prison safety and security. The rejection of Plaintiff's email several times is premised on the same fundamental reasoning and thus Claim 2 fits within issue preclusion. Alternatively, the unrefuted evidence from Collis about the email and the communication surrounding rejecting its transmission provide ample support under the *Turner* factors for the suppression of this specific communication. Thus, summary judgment is warranted on Claim 2 on issue preclusion or on the merits.

The same logic holds for Claim 6, concerning Plaintiff's new book—Racism: A Reappraisal. Given that it is a new work, the Court does not find claim preclusion appropriate, but it still finds issue preclusion fitting. Defendant submitted a copy of the book and Collis' memorandum recommending rejection. (Doc. 98-11 at pp. 63-70, 132-143). The book was twice rejected, and both memorandums contained an extensive explanation of the content perceived as problematic by the BOP. (*Id.*). Significantly, the book referenced other Creativity texts, and Collis characterized it as posing a risk of inciting threats to security and good order in the prison and in the public. Collis also noted the significant intertwinement of STG material by the many references to Creativity and Creativity texts. Claim 6 qualifies for issue preclusion, and even if it did not the unrefuted reasons the BOP has proffered for restricting dissemination of the book pass muster under *Turner.*

Claim 5 appears to be a catch-all claim in the complaint, broadly challenging any mail restriction. Defendant argues this claim should be subject to claim preclusion or issue preclusion because there is ample evidence from exhibits they have submitted that Collis always put forth and the BOP relied upon reasons to restrict correspondence that were found appropriate under *Hale II and III*. While the Court agrees that issue preclusion may apply, the difficulty with this claim at this point is even simpler. Plaintiff's assertions in Claim 5, though vague, were sufficient to proceed beyond initial review in this case, but at the summary judgment phase a litigant must provide more than bare unadorned assertions. Plaintiff's utter failure to respond to the Motion for Summary Judgment leaves Claim 5 subject to dismissal as insufficiently supported. The Defendant properly noted that they submitted a discovery query to try to better elucidate this claim but got no response. As such, Plaintiff essentially abandoned this claim, and summary judgment is now warranted in Defendant's favor.

Finally, Plaintiff alleges in Claim 9 that Defendant retaliated against him for filing this suit by instituting a mail restriction after he filed this suit. The initial complaint was filed in this matter in May of 2021, and Plaintiff insinuates that the general mail restriction he received in September of 2022 was retaliatory. A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

"To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Then the burden shifts to the Defendant to rebut Plaintiff's prima facie showing by establishing that "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id.*

Here, Plaintiff identified protected speech with the filing of this lawsuit, and a mail ban is likely a deterrent, though it can surely be debated if any sort of mail ban actually serves as a deterrent to *this particular* Plaintiff. To demonstrate an injury for retaliation purposes, an individual must establish "a showing of 'an objectively reasonable chilling effect' generally and that the plaintiff personally 'self-censors [his speech] as a result.'" *Henson v. Neal*, 2026 WL 92175 (7th Cir. Jan. 13, 2026). Here, Plaintiff does not appear deterred from litigating by past or present restrictions on his ability to send mail. But even if Plaintiff could establish an injury, Defendant has put forth evidence that the general mail restriction was not related to Plaintiff's filing of this suit and happened based on other ongoing conduct—namely the attempted transmission of at least 130 documents that Collis screened and recommended be rejected from 2020 through September of 2022. Given that Plaintiff filed no response to the motion for summary judgment, he cannot overcome the Defendant's evidence that there were legitimate non-retaliatory reasons for the mail restriction and summary judgment must be granted in Defendant's favor on Claim 9.

In sum, Claims 7 and 8 have been rendered moot, and Claim 1 is partially moot to the extent that four chapters of the Triumph of Life have been mailed out of the prison.

As for the remainder of Claim 1, Claim 2, and Claim 6, all claims are barred by issue preclusion, and even if they were not, they fail on the merits. Summary judgment is warranted on Claim 5 because it lacks clarity and Plaintiff made no effort to bolster or support it after summary judgment was filed, relying solely on his original allegations. Summary judgment is warranted on Claim 9 because Plaintiff did not refute Defendant's legitimate non-retaliatory reason for placing him on a general mail restriction.

## DISPOSITION

Defendant's Unopposed Motion to Seal Select Exhibits (Doc. 96) is **GRANTED**, and Defendant's Motion for Summary Judgment (Doc. 97) is **GRANTED** in full. The Clerk of Court shall enter judgment and **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 14, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.08.14 08:01:23 -05'00'

DAVID W. DUGAN
United States District Judge